1
2
3
4
5
6
7

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MATTHEW HARVILLE,<br><br>        Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>        Defendant. | No.  2:15-CV-1175-DMC<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties (Docs. 7 and 18), this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment.  See 28 U.S.C. § 636(c). Pending before the court are the parties' cross-motions for summary judgment (Docs. 17 and 20).

The court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

1    including both the evidence that supports and detracts from the Commissioner's conclusion, must

2    be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

3    v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

4    decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

5    Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

6    findings, or if there is conflicting evidence supporting a particular finding, the finding of the

7    Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

8    Therefore, where the evidence is susceptible to more than one rational interpretation, one of

9    which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

10    Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

11    standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

12    Cir. 1988).

13

## I.  THE DISABILITY EVALUATION PROCESS

15        This case involves determinations on separate applications.  On a first application

16    for childhood disability benefits, the Commissioner determined plaintiff was disabled as a child

17    and, because plaintiff attained age 18 prior to the decision, as an adult.  In this action plaintiff

18    challenges a subsequent determination on the first application that plaintiff is no longer disabled.

19    Plaintiff also challenges the Commissioner's determination in the context of a second application

20    filed after plaintiff attained age 18 that plaintiff is not disabled.

21                **Initial Adult Disability Determinations**

22        To achieve uniformity of decisions, the Commissioner employs a five-step

23    sequential evaluation process to determine whether a claimant is disabled.  See 20 C.F.R.

24    §§ 404.1520 (a)-(f) and 416.920(a)-(f).   The sequential evaluation proceeds as follows:

25          Step 1      Determination whether the claimant is engaged in
                              substantial gainful activity; if so, the claimant is presumed
26                              not disabled and the claim is denied;

27    / / /

28    / / /

| | | |
|---|---|---|
| Step 2 | | If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 3 | | If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the clam is granted; |
| Step 4 | | If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied; |
| Step 5 | | If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied. |

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d

1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

**Continuing Adult Disability Determinations**

A presumption of continuing disability arises in favor of claimants who have met their burden of establishing disability under the Social Security Act. See Bellamy v. Secretary of Health and Human Services, 755 F.2d 1380, 1381 (9th Cir.1985) (citing Murray v. Heckler, 722 F.2d 499, 500 (9th Cir.1983)). Under the Act, however, cases must be reviewed at least once every three years "to determine whether a period of disability has ended." Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1460 (9th Cir. 1995); see also Schweiker v. Chilicky, 487 U.S. 412, 415 (1988); 42 U.S.C. § 421(i)(1) (requiring review for continuing eligibility at least once every three years); 20 C.F.R. § 404.1594 (regulation governing termination of benefits). To determine whether a claimant continues to be disabled for purposes of receiving social security benefits, the Commissioner engages in a seven-step sequential evaluation process. See 20 C.F.R. § 416.994. The sequential evaluation proceeds as follows:

Step 1  Determination whether the claimant has an impairment or combination of impairments that meet or medically equal an impairment listed in the regulations; if so, the claimant remains disabled;

Step 2  Determination whether, since the time of the most recent favorable decision (comparison point decision, or CPD), there has been medical improvement, which is any decrease in medical severity; if so, the analysis proceeds to Step 3; if not, the analysis proceeds to Step 4;

Step 3  Determination whether medical improvement results in an increase in the claimant's capacity to perform basic work activities;

Step 4  Determination whether an exception to the requirement of medical improvement under one of the two groups of exceptions outlined in 20 C.F.R. § 416.994(b)(3) and (4) applies; if an exception from the first group applies, the analysis proceeds to Step 5; if an exception from the second group applies, the claimant is no longer disabled; if no except applies, the claimant's remains disabled;

Step 5  Determination whether all of the claimant's current impairments are severe; if not, the claimant is no longer disabled;

4

| | | |
|---|---|---|
| Step 6 | | If the claimant has severe impairments, determination whether the impairments prevent the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is no longer disabled; |
| Step 7 | | If the claimant cannot perform past relevant work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is no longer disabled. |

See 20 C.F.R. § 416.994.

The Commissioner bears the "burden of producing evidence sufficient to rebut [the] presumption of continuing disability." Bellamy, 755 F.2d at 1381; see also Murray, 722 F.2d at 500 ("The Secretary. . . has the burden to come forward with evidence of improvement").

## II. THE COMMISSIONER'S FINDINGS

Plaintiff's mother applied for childhood social security benefits on behalf of plaintiff of May 3, 2005. See CAR 398-400.[1] In the application, plaintiff's mother claimed disability beginning on June 10, 1992. See at 49. The claim was denied and an action for judicial review was initiated in this court. See Harville v. Astrue, E. Dist. Cal. Case No. 2:08-CV-0171-KJM. The court remanded the matter to the agency for consideration of new evidence. See id.

On remand, a new hearing was held on June 10, 2010, before Administrative Law Judge (ALJ) Theodore T.N. Slocum. See CAR 49. In an August 20, 2010, decision, the ALJ outlined the issues as follows:

> The issue is whether the claimant is disabled under section 1614(a)(3) of the Social Security Act. The claimant was under age 18 at the time of the application and attained age 18 before the date of this decision. Therefore, in accordance with 20 CFR 416.942(f), the specific issues are whether the claimant was disabled under section 1614(a)(3)(C) [governing childhood disability] of the Social Security Act for the period before age 18 and whether the claimant is disabled under section 1614(a)(3)(A) [governing adult disability] of the Social Security Act beginning at age 18.

> See id.

---

[1] Citations are the to the Certified Administrative Record (CAR) lodged on June 7, 2017 (Doc. 13).

The ALJ determined plaintiff was disabled both as a child and an adult based on the following

relevant findings:

> 1. The claimant was born on June 10, 1992, and was therefore in the "Adolescent (age 12 to attainment of age 18)" age group on May 3, 2005;
>
> 2. The claimant attained age 18 on June 9, 2010;
>
> 3. Since the alleged onset date, the claimant has had the following severe impairments: organic brain syndrome, attention deficit hyperactivity disorder (ADHD), anxiety disorder, severe learning disorder, adjustment disorder, and depressive disorder NOS [not otherwise specified];
>
> 4. Since the alleged onset date, the severity of the claimant's organic brain syndrome, ADHD, and anxiety disorder has met the criteria of sections(s) 112.02A & B2 and at age 18 met 12.02, and 112.11B and at age 18 met 12.06 of Listings of Impairments.

> CAR 53-56.

On January 24, 2011, plaintiff filed a second application for disability benefits.

See id. at 13. In this second application, plaintiff alleged disability beginning on May 31, 2010.

See id. While the second application was under initial agency review, a review of the August 20,

2010, disability determination was initiated and, on September 11, 2011, it was concluded

plaintiff is no longer disabled as of August 15, 2011.[2] See id. at 30. The second application was

denied on December 20, 2012, and plaintiff requested a hearing as to both decisions (the

September 11, 2011, disability determination review on the first application and the December

20, 2012, determination on the second application). A single hearing was held on August 5,

2013, before ALJ Carol A. Eckersen, who issued separate decisions. See id. at 13, 30.

/ / /

/ / /

/ / /

---

[2] It appears the review of the August 20, 2010, decision finding plaintiff disabled as both a child and as an adult was erroneously initiated by the state agency disability determination department as a review of plaintiff's case upon attainment of age 18, but treated as an adult continuing disability review by the ALJ. The court observes in this regard that an age-18 review would not have been appropriate because plaintiff had already attained age 18 by the time the review was initiated. Specifically, in the August 20, 2010, decision, plaintiff was found disabled both as a child and an adult.

In a November 18, 203, decision regarding the continuing disability review determination, the ALJ concluded plaintiff is not disabled after August 15, 2011, based on the following relevant findings:

1.  At the time of the August 20, 2010, comparison point decision (CPD), the claimant had the following severe impairment(s): organic brain syndrome, attention deficit hyperactivity disorder, anxiety disorder, severe learning disorder, adjustment disorder, and depressive disorder not otherwise specified;

2.  The medical evidence establishes that the claimant did not develop any additional impairments after the CPD through August 15, 2011, and that as of August 15, 2011, the claimant's impairments were a history of attention deficit hyperactivity disorder and organic brain syndrome with learning disorder;

3.  Since August 15, 2013, the claimant has not had an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

4.  Medical improvement occurred as of August 15, 2011;

5.  The medical improvement is related to the ability to work because, as of August 15, 2011, the claimant no longer had an impairment or combination of impairments that met or medically equaled the same listing(s) that was met at the time of the CPD;

6.  Beginning August 15, 2011, the claimant's impairments have continued to be severe;

7.  Beginning August 15, 2011, the claimant has had the residual functional capacity to perform a full range of work at all exertional levels with the following non-exertional limitations:  he can perform only simple repetitive tasks in a non-public setting with only occasional co-worker and supervisor interactions;

8.  Beginning August 15, 2011, considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR at 33-44.

In a December 12, 2013, decision addressing plaintiff's second application for benefits, the ALJ concluded plaintiff is not disabled after August 15, 2011, based on the following relevant findings:

1.  The claimant has the following severe impairment(s): a history of attention deficit hyperactivity disorder, organic brain syndrome with learning disorder;

7

2.      The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.      The claimant has the following residual functional capacity: a full range of work at all exertional levels, except he can only perform simple repetitive tasks in a non-public setting with only occasional co-worker and supervisor interactions;

4.      Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See CAR at 17-26.

After the Appeals Council declined review on April 1, 2015, this appeal followed.

## III. DISCUSSION

In his motion for summary judgment, plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinions; (2) the ALJ failed to properly consider his subjective pain testimony; (3) the ALJ failed to properly consider lay witness evidence offered by plaintiff's mother; and (4) the ALJ failed to provide sufficient rationale to support the vocational findings at Step 5.

Plaintiff also raises a number of arguments related to the procedural context in which the first decision was rendered. Plaintiff argues the November 18, 2013, disability review decision should be reversed because records relating to the comparison point decision (i.e., the August 20, 2010, decision finding plaintiff disabled both as a child and an adult) are not included in the current administrative record. According to plaintiff:

The Ninth Circuit hasn't decided whether a continuing disability review must consider the underlying record supporting the comparison point decision — here ALJ Slocum's — but other circuits, this District, and at least one other district in this Circuit have held that the underlying evidence is necessary to perform a proper continuing disability review. (*Byron v. Heckler*, 742 F.2d 1232, 1236 (10th Cir. 1984) (per curiam) ["... there must be an evaluation of the medical evidence for the original finding of disability"]; *Vaughn v. Heckler*, 727 F.2d 1040, 1043 (11th Cir. 1984) [ALJ "required to evaluate the medical evidence upon which" claim first granted]; *Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002); Thao

8

v. Astrue, 2010 WL 1795887 (E.D.Cal 5/4/10) [remanded because no record from comparison point decision]; *Lee v. Astrue*, 2012 WL 928741 (E.D.Cal. 3/16/12) [unclear whether ALJ had reviewed or considered medical evidence underlying the CPD]; *Hryzhuk v. Colvin*, No. 2:14-cv-2561-EFB (E.D.Cal. 3/24/16 [remanding because "the Commissioner has not presented this court with the record supporting the CPD"]; *Chambers v. Astrue*, 2012 U.S. Dist. LEXIS 95095 (D.Or. 7/10/12).

Citing 42 U.S.C. § 504(a) and (b), plaintiff also argues the November 18, 2013, decision regarding the continuing disability review determination is void ab initio because it was improperly initiated by the state agency disability determination department and not the Commissioner. Finally, plaintiff contends the continuing disability review determination should also be reversed because it was incorrectly initiated as an "age-18 redetermination" with no presumption of continuing disability and because the ALJ incorrectly applied the medical improvement standard, which plaintiff asserts does not apply in an age-18 redetermination action.

To the extent the Commissioner erred procedurally with respect to initiation of the continuing disability determination or evaluation of plaintiff's case in the November 18, 2013, decision, any errors were effectively rendered moot because the Commissioner reached the exact same decision on December 12, 2013, in the context of reviewing plaintiff's second application for disability benefits. In both decisions, the ALJ concluded plaintiff was no longer disabled as of August 15, 2011. Therefore, even if this court set aside the November 18, 2013, determination based on errors claimed by plaintiff, the December 12, 2013, decision would remain. The issue is whether plaintiff continues to be disabled as of August 15, 2011, and the December 12, 2013, addressed that issue in the proper procedural context of review of plaintiff's second application.[3] Given its unique procedural posture, the current case is distinguishable from the cases cited by plaintiff.

Given the questionable procedural history surrounding the November 18, 2013, determination, and because the same ultimate issue is addressed in the December 12, 2013, determination, the court's analysis of plaintiff's substantive arguments will focus on the later decision.

_____

[3] Plaintiff's procedural challenges to the November 18, 2013, determination would be more persuasive had plaintiff not filed a second separate application for disability benefits.

## A.     Evaluation of the Medical Opinions

At Step 4 of the five-step sequential analysis applied to assess plaintiff's application for adult disability benefits, the ALJ evaluated the medical opinion evidence.  See CAR 19-25.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional.  See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).  The least weight is given to the opinion of a non-examining professional.  See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record.  See Lester, 81 F.3d at 831.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict.  See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence.  See Lester, 81 F.3d at 830.  This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding.  See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989).  Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional.  See Lester, 81 F.3d at 830-31.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  See id. at 831.  In any event, the Commissioner need not give weight to any

conclusory opinion supported by minimal clinical findings.  See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

In this case, the ALJ gave "significant weight" to the majority of the opinions of treating sources Drs. Rosi, Physician's Assistant Rose, and Licensed Marriage and Family Therapist Reed.  See CAR 23.  The ALJ also gave "significant weight" to the opinions of non-examining consultative physicians, Drs. Meena and Regan, as well as the opinions of examining consultative physician, Dr. Richwerger.  See id. at 23-24.  As to Dr. Rosi and Ms. Reed, however, the ALJ did not accept all opinions.  Specifically, the ALJ stated:

> Little weight is accorded to elements of the opinions of former treating source Donna Reed, LMFT from March 2011, that the claimant under supervision and structure, can lead a functional life, but will always lack full independence; lacks capacity to live independently as an adult, does not understand the concepts of money, much less a budget and has a representative payee (Exhibit B2F/5).  The medical records of Dr. Rosi do not support such extreme findings of limitations as well as the claimant's testimony as to activities of daily living.  It is also inconsistent with the opinions of Drs. Rosi, Richwerger, Meena and Regan, Mr. Rose.

> And little weight is accorded to that part of the opinion of Dr. Rosi submitted after hearing herein, that the claimant's ability to function in the workplace is severely limited, needs continued simplicity and repetition, his adaptability to changes is poor, job prospects are few, needs directions simplified, repeated, and practiced in order to retain them (Exhibit 16F).  Generally significant weight is accorded the opinion of a long term treating source, however, that is only when it is consistent with the long-term treating records of that source, as well as other records.  Herein it is not, for mental status examination findings, the doctors [sic] own medical notes, as well as his assessments of Global Assessment of Functioning scores do not support such extreme findings of limitation.  It is not supported by the claimant's activities of daily living, nor other opinions of record, those of Drs. Richwerger, Meena and Regan, Mr. Rose.

CAR 25.

Plaintiff argues the ALJ erred in giving little weight to the "inconvenient, disabling aspects" of the opinions of treating sources, Dr. Rosi and Ms. Reed.

/ / /

/ / /

/ / /

/ / /

1    Plaintiff's argument is unpersuasive.  The ALJ in this case gave significant weight

2   to the opinions of consultative examining physician, Dr. Richwerger.  See CAR 23.  As to Dr.

3   Richwerger, the ALJ stated:

4           Consulting examiner Dr. David Richwerger evaluated the claimant in
            April 2012, opining he has no impairment in the ability to perform simple
5           repetitive tasks, perform work activities without special supervision,
            maintain regular attendance in the workplace; has a slight impairment in
6           the ability to perform detailed and complex tasks, complete a normal
            workday without interruption from his psychiatric condition, understand
7           and accept instructions from supervisors, deal with the usual workplace
            stressors; and has mild to moderate or moderate impairment in the ability
8           to perform work activities on a consistent basis, interact with coworkers
            and the public.  He also opined the claimant capable of managing his
9           funds.  He assessed a Global Assessment of Functioning score of 61-70
            (Exhibit 10F).
10
            CAR 23.
11

12   Because Dr. Rosi's opinions regarding plaintiff's ability to retain and follow instructions is

13   contradicted by Dr. Richwerger's opinions, the ALJ was not required to provide "clear and

14   convincing" reasons, as plaintiff asserts.  See Lester, 81 F.3d at 831.

15           Applying the "specific and legitimate" standard, the court finds no error in the

16   ALJ's evaluation of Dr. Rosi's opinions.  As the ALJ noted, Dr. Rosi's opinions of extreme

17   limitations are inconsistent with Dr. Richwerger's opinions.  The ALJ was entitled to resolve this

18   conflict.  See Andrews, 53 F.3d at 1041.  Additionally, a review of Dr. Rosi's post-hearing

19   opinion, submitted September 3, 2013, reflects it is not explained with reference to any clinical

20   objective findings.  See Meanel, 172 F.3d at 1113 (9th Cir. 1999).  Finally, as the ALJ also noted,

21   Dr. Rosi's September 2013 opinion is inconsistent with the doctor's own treating records which

22   show steady improvement in plaintiff's mental condition with conservative care.[4]  The court finds

23   the ALJ properly rejected portions of Ms. Reed's opinions for the same reasons.

24   / / /

25   / / /

26   / / /

27          [4]     Dr. Rosi's Global Assessment of Functioning (GAF) scores reflect this
     improvement.  As the ALJ noted, Dr. Rosi initially assessed plaintiff's GAF as 55.  See CAR 23.
28   By 2013, however, plaintiff's GAF had improved to 68-69.  See id.

**B.     Credibility Assessment**

At Step 4 of the five-step sequential evaluation, the ALJ assessed the credibility of plaintiff's statements and testimony. See CAR 20-22. The Commissioner determines whether a disability applicant is credible, and the court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons. See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996). An explicit credibility finding must be supported by specific, cogent reasons. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990). General findings are insufficient. See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995). Rather, the Commissioner must identify what testimony is not credible and what evidence undermines the testimony. See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing." See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc). As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing credibility, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent

13

testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. <u>See</u> <u>Smolen</u>, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. <u>See</u> <u>Carmickle</u>, 533 F.3d at 1161 (citing <u>Swenson v. Sullivan</u>, 876 F.2d 683, 687 (9th Cir. 1989)).

As to plaintiff's statements and testimony, the ALJ stated:

> The claimant. . .alleges attention deficit hyperactivity disorder and organic brain syndrome (Exhibit B1E). The claimant has alleged difficulty sitting still, focusing, getting angry easily, frustration; difficulty with memory, concentrating and losing interest in things quickly; has loss of appetite, sleeps only about 4 hours a night, and is uneasy around people, has a lot of social anxiety; feels depressed, enjoying life only sometimes; is not motivated, and has very little energy; has racing thoughts, worries a lot (Exhibit B9F/13, 3/2011). He indicates needing reminders from his parent to take meds; does not cook and can't fearing will burn house down; does not do household chores inside or out as he doesn't know how to; has no driver's license, and does not shop, does not understand how to pay bills, but can count change. He also alleges that [he] does not follow written instructions well, nor handle stress or change well (Exhibit B2E, B4E, B5E, B6E, B8E, B10F/4).

CAR 20.

The ALJ found plaintiff's statements and testimony not credible because, among other reasons, the record shows "significant improvement with medications, treatment and the progressive maturity of the claimant." <u>Id.</u> Specifically, the ALJ noted records from psychiatrist, Dr. Ni Ni Hla at Exhibit B1F, Physician's Assistant Rose at Exhibit 9F, treating physician, Dr. Pham at Exhibit B4F, and treating psychiatrist, Dr. Rosi at Exhibits B1F, B9F, and B14F. <u>See id.</u> at 20-21. As to Dr. Rosi's records, the ALJ noted the following timeline of improvement:

| | |
|---|---|
| September 2011 | Claimant was more animated, interactive, and talkative than in the past, and appears to be more independent. The doctor noted significant improvements since the last visit in 2008. Exhibit B9F. |

14

| | |
|---|---|
| October 2011 | Claimant continues to have positive social interactions, is not using substances, and is working periodically and attending school. Exhibit B9F. |
| January 2012 | Claimant has made progress over the year and is future oriented. Depression has remitted. The doctor opined claimant's functioning is not significantly impaired by depression, which presented as mild. Exhibit B14F. |
| April 2012 | Claimant's level of functioning continues to improve and he is tapering off medication with continuing stability. Exhibit B14F. |
| August 2012 | Claimant restarted college, taking four classes. He has not had problems with fidgeting, focusing, or forgetfulness. Claimant reported being active outside the home, being social with friends, and having no changes with respect to sleep, energy, appetite, and mood. Claimant reported no depressive episodes since stopping and/or decreasing medication. Exhibit B14F. |
| January 2013 | Claimant reported better self-control, especially anger, and that he was focusing well, having happy moods, and spending time with friends. Claimant's insight and judgment were both good. Exhibit B14F. |
| February 2013 | Claimant reported being motivated to find work. When asked about his symptoms, claimant responded: "I can control it now." Claimant reported driving himself to appointment and working odd jobs during the day. Claimant decided to complete discontinue medication. |
| June 2013 | Claimant reported: "I feel a lot better." |

See CAR 21-22.

The court finds no error in the ALJ's credibility assessment because the ALJ properly cites to inconsistencies between the record and plaintiff's allegations which are supported by substantial evidence. See Smolen, 80 F.3d at 1284. Specifically, plaintiff's allegations of totally disabling symptoms are inconsistent with evidence he experienced improvement to the point he felt he could pursue work and school.

/ / /

/ / /

**C.    Consideration of Lay Witness Evidence**

In determining whether a claimant is disabled, an ALJ generally must consider lay witness testimony concerning a claimant's ability to work.  See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); 20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e).  Indeed, "lay testimony as to a claimant's symptoms or how an impairment affects ability to work is competent evidence . . . and therefore cannot be disregarded without comment."  See Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996).  Consequently, "[i]f the ALJ wishes to discount the testimony of lay witnesses, he must give reasons that are germane to each witness."  Dodrill, 12 F.3d at 919.  The ALJ may cite same reasons for rejecting plaintiff's statements to reject third-party statements where the statements are similar.  See Valentine v. Commissioner Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (approving rejection of a third-party family member's testimony, which was similar to the claimant's, for the same reasons given for rejection of the claimant's complaints).

The ALJ, however, need not discuss all evidence presented.  See Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant probative evidence has been rejected."  Id. (citing Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981).  Applying this standard, the court held that the ALJ properly ignored evidence which was neither significant nor probative.  See id. at 1395.  As to a letter from a treating psychiatrist, the court reasoned that, because the ALJ must explain why he rejected uncontroverted medical evidence, the ALJ did not err in ignoring the doctor's letter which was controverted by other medical evidence considered in the decision.  See id.  As to lay witness testimony concerning the plaintiff's mental functioning as a result of a second stroke, the court concluded that the evidence was properly ignored because it "conflicted with the available medical evidence" assessing the plaintiff's mental capacity.  Id.

In Stout v. Commissioner, the Ninth Circuit recently considered an ALJ's silent disregard of lay witness testimony.  See 454 F.3d 1050, 1053-54 (9th Cir. 2006).  The lay witness had testified about the plaintiff's "inability to deal with the demands of work" due to alleged back pain and mental impairments.  see id.  The witnesses, who were former co-workers testified about

16

the plaintiff's frustration with simple tasks and uncommon need for supervision. See id. Noting that the lay witness testimony in question was "consistent with medical evidence," the court in Stout concluded that the "ALJ was required to consider and comment upon the uncontradicted lay testimony, as it concerned how Stout's impairments impact his ability to work." Id. at 1053. The Commissioner conceded that the ALJ's silent disregard of the lay testimony contravened Ninth Circuit case law and the controlling regulations, and the Ninth Circuit rejected the Commissioner's request that the error be disregarded as harmless. See id. at 1054-55. The court concluded:

> Because the ALJ failed to provide any reasons for rejecting competent lay testimony, and because we conclude that error was not harmless, substantial evidence does not support the Commissioner's decision . . .

Id. at 1056-67.

From this case law, the court concludes that the rule for lay witness testimony depends on whether the testimony in question is controverted or consistent with the medical evidence. If it is controverted, then the ALJ does not err by ignoring it. See Vincent, 739 F.2d at 1395. If lay witness testimony is consistent with the medical evidence, then the ALJ must consider and comment upon it. See Stout, 454 F.3d at 1053. However, the Commissioner's regulations require the ALJ consider lay witness testimony in certain types of cases. See Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); SSR 88-13. That ruling requires the ALJ to consider third-party lay witness evidence where the plaintiff alleges pain or other symptoms that are not shown by the medical evidence. See id. Thus, in cases where the plaintiff alleges impairments, such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored. Therefore, in these types of cases, the ALJ is required by the regulations and case law to consider lay witness evidence.

/ / /

/ / /

/ / /

Plaintiff argues the ALJ failed to properly evaluate lay witness evidence from plaintiff's mother. According to plaintiff: "It may be noted that the decision expressly applied the wrong legal standard to his mother's allegations, namely the standard applied to him." As to plaintiff's mother, the ALJ stated:

> The claimant's allegations are supported and supplemented by his mother Afrodita Harville (Exhibit B5E). She reports similar to the claimant, that he needs reminders for meds, doesn't know how to cook, has no driver's license, doesn't shop nor pay bills; was born with disability, gets angry fast.

> * * *

> The claimant and his mother, Ms. Harville, are not fully credible.

> CAR 20, 24.

While plaintiff is correct the ALJ applied the "standard applied to him" to the extent plaintiff notes the ALJ rejected his statements and testimony as well as his mother's statements for the same reasons, the court does not agree this constituted error. See Valentine, 574 F.3d at 694.

**D.    Vocational Findings**

At Step 5 of the five-step sequential evaluation process, the ALJ determined plaintiff can perform other work. See CAR 25, 43-44.[5] The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity. See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

/ / /

/ / /

/ / /

---

[5]    The ALJ did not explain her vocational findings in the December 12, 2013, decision, but does in her November 18, 2013, decision, in which the ALJ reached the same vocational conclusion plaintiff can perform other work. See CAR 43 (November 18, 2013, decision).

18

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[6] See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)). The Commissioner may, however, rely on the Grids even when a claimant has combined exertional and non-exertional limitations, if non-exertional limitations do not impact the claimant's exertional capabilities. See Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Medical-Vocational Guidelines are inapplicable because the plaintiff has sufficient

/ / /

---

[6] Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a). "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. See 20 C.F.R. §§ 404.1567(a) and 416.967(a). "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. See 20 C.F.R. §§ 404.1567(b) and 416.967(b). "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. See 20 C.F.R. §§ 404.1567(c) and 416.967(c). "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. See 20 C.F.R. §§ 404.1567(d) and 416.967(d). "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. See 20 C.F.R. §§ 404.1567(e) and 416.967(e). Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

non-exertional limitations, the ALJ is required to obtain vocational expert testimony.  See

Burkhart v. Bowen, 587 F.2d 1335, 1341 (9th Cir. 1988).

Hypothetical questions posed to a vocational expert must set out all the substantial,

supported limitations and restrictions of the particular claimant.  See Magallanes v. Bowen, 881

F.2d 747, 756 (9th Cir. 1989).  If a hypothetical does not reflect all the claimant's limitations, the

expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary

value.  See DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to

the expert a range of hypothetical questions based on alternate interpretations of the evidence, the

hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by

substantial evidence in the record as a whole.  See Embrey v. Bowen, 849 F.2d 418, 422-23 (9th

Cir. 1988).

According to plaintiff: "The burden in both cases was on the agency; it did not

discharge that burden by adducing jobs produced by a vocational expert in response to a

hypothetical question involving the capacity for *frequent* coworker and supervisor interaction

when the decision's RFC was for occasional. . . ." (emphasis in plaintiff's brief).  As to this issue,

the ALJ noted the vocational expert testified a person with the capacity to engage in frequent

supervisor and co-worker interactions could perform work as a janitor, hand packer, and

warehouse worker.  See CAR 43.  The ALJ then stated:

> The residual functional capacity above, with regard to interaction with
> coworkers and supervisors is more restrictive – only occasional interaction
> with supervisors, co-workers – than the proposed residual functional
> capacity given to the vocational expert incorporating limits to frequent
> interaction with co-workers and supervisors.  However, the primary work
> functions in the bulk of unskilled work relate to working with other people
> does not bar the claimant from performing unskilled work and should not
> prevent reliance on the jobs cited by the vocational expert (20 CFR
> § 201.00(i) and § 202.00(g)).

> Id.

It is unclear why the ALJ did not propose a hypothetical to the vocational expert based on a

limitation to occasional co-worker and supervisor contact.

/ / /

/ / /

Even though the ALJ did not pose a hypothetical question including a limitation to only occasional co-worker and supervisor interaction, the court finds no error. As the ALJ and defendant note, the unskilled jobs identified by the vocational expert – janitor, hand packer, and warehouse worker – involve dealing primarily with objects rather than people. See Social Security Ruling 85-15; accord Tamao v. Colvin, 2015 WL 1146713 (E.D. Cal. 2015) (affirming the ALJ's determination claimant could work as a janitor despite a limitation to only occasional interaction with the public); Dreesman v. Colvin, 2014 WL 4626006 (N.D. Cal. 2014) (finding a claimant limited to unskilled work with occasional interaction with others could work as a janitor).

## IV. CONCLUSION

Based on the foregoing, the court concludes that the Commissioner's final decision is based on substantial evidence and proper legal analysis. Accordingly, IT IS HEREBY ORDERED that:

      1.    Plaintiff's motion for summary judgment (Doc. 17) is denied;

      2.    Defendant's motion for summary judgment (Doc. 20) is granted;

      3.    The Commissioner's final decision is affirmed; and

      4.    The Clerk of the Court is directed to enter judgment and close this file.

Dated: September 28, 2018

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

21